## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALLY CASIS, WINSTON FARRELL, JERMAINE HARRISON, SERGIO RIVERA, SHAWN SAMUEL, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF NEW YORK, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  Case No. _____ <br><br> (Jury Trial Demanded) |

## **COMPLAINT**

Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP and Spivak Lipton LLP, for their Complaint against the City of New York ("City") state as follows:

### INTRODUCTION

1. Plaintiffs are current and former employees of the Defendant, City of New York, in the positions of Urban Park Ranger, Associate Urban Park Ranger (AUPR), and/or Associate Park Service Worker (APSW) in the Department of Parks and Recreation (DPR). Plaintiffs bring this action against Defendant for back pay, liquidated damages, attorneys fees and costs, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the Defendant's willful and unlawful violations of federal law complained of herein.

2. Plaintiffs bring this action against Defendant as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation in accordance with the FLSA.

The Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant suffered or permitted Plaintiffs to perform uncompensated overtime work before their paid shifts, during their unpaid meal periods, and after their paid shifts. Plaintiffs are also similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant fails to properly calculate the regular rate of pay upon which Plaintiffs' overtime rate is based and fails to pay overtime compensation in a timely manner.

## PARTIES

3. All Plaintiffs listed in Exhibit A have given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). In addition to five representative Plaintiffs (Sally Casis, Winston Farrell, Jermaine Harrison, Sergio Rivera, and Shawn Samuel), additional opt-in Plaintiffs have submitted written consent to be Party-Plaintiffs in this action. The written consent forms attached as Exhibit A set forth each Plaintiff's name and address.

4. Each of the Plaintiffs in this action, while employed by Defendant has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

5. Defendant City of New York is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency and "employer" within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, New York, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, 10007.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

8. Plaintiffs are, and have been at all times material, employed by Defendant in the positions of Urban Parks Ranger (UPR). Associate Urban Parks Ranger (AUPR) and/or Associate Park Service Worker (APSW) in the City's Department of Parks and Recreation (DPR).

9. For example, at all times material, plaintiff Sally Casis has worked for Defendant as a UPR and AUPR and has been assigned to Washington Square Park in Manhattan. At all times material, plaintiff Winston Farrell has worked for Defendant as an UPR and has been assigned the Staten Island Borough Command location. At all times material, plaintiff Jermaine Harrison has worked for Defendant as an AUPR at Randall's Island in Manhattan. At all times material, plaintiff Sergio Rivera has worked for Defendant as an UPR at Bushwick Inlet Park in Brooklyn. At all times material, plaintiff Shawn Samuel has worked for Defendant as an APSW assigned to Coney Island/Bay Ridge in Brooklyn.

10. Within the last three years and continuing to date, while working in the position of UPR and AUPR on behalf of Defendant and the DPR, the job duties of Plaintiffs Casis, Farrell, Harrison, and Rivera and all others similarly situated include but are not limited to: opening, closing and patrolling New York City parks, issuing summonses and citations, making arrests, noting violations of laws, rules and regulations, and answering visitor questions.

11. Within the last three years and continuing to date, while working in the position of APSW on behalf of Defendant and the DPR, the job duties of Plaintiff Samuel and all others similarly situated include but are not limited to: Driving commercial vehicles including passenger vans and garbage trucks to transport crews to and from park locations; directing crews to clean and service parks by removing trash including broken bottles and needles, cleaning bathrooms, and removing leaves; cleaning and servicing the parks; picking up garbage and dumping garbage from the garbage truck; and communicating with visitors at the parks.

12. While working as a UPR, AUPR and/or APSW, Plaintiffs and all others similarly situated are regularly scheduled to work 40 hours a week. They are scheduled to work eight and one-half hour shifts with a one-half hour uncompensated meal period. However, Plaintiffs routinely work hours in addition to their regularly scheduled 40 hour shifts such that they work overtime over 40 hours in a workweek. However, the City fails to compensate Plaintiffs and all others similarly situated for all hours worked in excess of 40 in a workweek at a rate of one and one-half times their regular rate of pay. Specifically, the City fails to compensate Plaintiffs and all others similarly situated for hours worked before the start of their scheduled shifts, after the end of their scheduled shifts, and work performed during their 30-minute unpaid meal periods.

13. While working as an UPR, AUPR, and/or APSW, Plaintiffs and all others similarly situated may be compensated for hours worked over 40 in a workweek *if* the overtime hours were pre-approved by Defendant. However, when the City compensates Plaintiffs and all others similarly situated for overtime hours that were pre-approved, the City systemically fails to pay Plaintiffs and all others similarly situated for this overtime work at the correct regular rate of pay.

14. Defendant captures the work hours of UPRs, AUPRs, and APSWs, including time spent working before their scheduled shift begins and/or after the end of their scheduled shifts, on the Defendant's timekeeping system, "CityTime," which is maintained and accessible at Plaintiffs' work locations. However, CityTime automatically deducts one-half hour each day for Plaintiffs' uncompensated meal periods regardless of whether or not the Plaintiffs work through all or part of their uncompensated meal period.

15. CityTime tracks Plaintiffs' work time on a minute-by-minute basis.

16. Plaintiffs' timekeeping and payroll data is in Defendant's exclusive possession and is not readily available to Plaintiffs. Plaintiffs' CityTime records and payroll data are not readily available to Plaintiffs and other UPRs and/or AUPRs because they are "maintained across various [agency] branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and requires a separate search for each pay period." *Murray, et al. v. City of New York*, No. 1:16-cv-08072-PKC, Dkt. 66 (S.D.N.Y. Oct. 18, 2017) at 3.

### *Uncompensated Work Performed by Plaintiffs and All Others Similarly Situated*

17. While working as UPRs, AUPRs, and/or APSWs, Plaintiffs and all others similarly situated routinely work over 40 hours a week. Plaintiffs are scheduled for five (5) shifts of eight (8) hours and thirty (30) minutes in length each week. Thirty minutes is automatically deducted each shift as an uncompensated meal period. Thus, Plaintiffs and all others similarly situated are scheduled to perform a minimum of 40 hours of work per workweek.

18. Plaintiffs and all others similarly situated frequently work overtime in addition to their regular 40 hours of work per week performing their regular job duties for which they are

5

not compensated. Specifically, they routinely work additional hours before the official start time of their regularly scheduled shifts, after the end of their regularly scheduled shifts, and during their unpaid meal periods, all without compensation. This pre-shift, post-shift and meal period work causes Plaintiffs and all others similarly situated to work in excess of 40 hours in each week because they are scheduled to work 40 hours per workweek even without this additional overtime. As such, Plaintiffs and all others similarly situated regularly work additional uncompensated hours which are in excess of 40 in a workweek.

19. Plaintiffs and all others similarly situated begin work before the official start time of their shifts and stop working after the end of their official shifts. Such pre-shift and post-shift work includes, but not limited to the tasks listed in Paragraphs 10 and 11. Plaintiffs in the positions of UPR and AUPR also perform pre-shift and post-shift tasks including, but not limited to, updating their required memo books, inspecting their equipment in advance of roll call, checking work-related emails, speaking to colleagues about their shifts, preparing paperwork, and other work activities. Plaintiffs in the position of APSW also perform pre-shift and post-shift tasks including, but not limited to, obtaining keys and vehicles, completing pre-trip inspections of vehicles, checking in with a supervisor to learn the Plaintiffs' route and crew for that shift, and cleaning the vehicles.

20. Plaintiffs and all others similarly situated work during some or all of their 30-minute unpaid meal periods performing their regular job duties (i.e., the tasks listed in Paragraphs 10 and 11) and remain "on call" and ready to respond as needed, but Plaintiffs are not compensated for this work time.

21. For example, Plaintiff Casis routinely works over 40 hours in a workweek. When Plaintiff Casis works over 40 hours, Defendant fails to compensate her for all of her work time,

6

including but not limited to time spent performing tasks enumerated in Paragraphs 10, 19 and 20 before the official start of her scheduled 8.5 hour shift, after the end of her 8.5 hour scheduled shift, and during her unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 9:30 am to 6:00 pm, Plaintiff Casis routinely arrives approximately 15-30 minutes prior to the start of her scheduled shift and begins performing work tasks. In addition, Plaintiff Casis works through her meal period approximately 2 times per week, performing the duties listed in Paragraphs 10 and 19. Thus, Plaintiff Casis is not compensated for at least approximately 2 hours and 15 minutes and as much as 3 hours and 30 minutes, approximately, of additional overtime work beyond her scheduled shift per week.

22. For example, Plaintiff Farrell routinely works over 40 hours in a workweek. When Plaintiff Farrell works over 40 hours, Defendant fails to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 10, 19 and 20 before the official start of his scheduled 8.5 hour shift, after the end of his 8.5 hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 7:30 am to 4 pm, Plaintiff Farrell arrives approximately 10-15 minutes prior to the start of his scheduled shift and begins performing work tasks including, but not limited to, completing his memo book, checking his email, preparing for roll call, and performing inventories. Plaintiff Farrell also cannot always finish performing his duties during his regularly scheduled shift, and occasionally continues to perform work tasks for approximately 10-15 minutes beyond the end of the scheduled shift. In addition, Plaintiff Farrell works through his meal period approximately 4-5 times per week, performing the duties listed in Paragraphs 10 and 19. Plaintiff Farrell is not compensated for this additional overtime work beyond his scheduled shift. Thus, Plaintiff Farrell is not compensated for at least 3 hours and 40 minutes,

approximately, and as much as 5 hours of additional overtime work beyond his scheduled shift per week.

23.  For example, Plaintiff Harrison routinely works over 40 hours in a workweek. When Plaintiff Harrison works over 40 hours, Defendant fails to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 10, 19 and 20 before the official start of his scheduled 8.5 hour shift, after the end of his 8.5 hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 9:30 am to 6:00 pm, Plaintiff Harrison arrives approximately 15-30 minutes prior to the start of his scheduled shift and begins performing work tasks including, but not limited to, preparing for roll call. Plaintiff Harrison also cannot always finish performing his duties during his regularly scheduled shift, and occasionally continues to perform work tasks for approximately 15 minutes beyond the end of the scheduled shift. In addition, Plaintiff Harrison works through his meal period approximately 3-4 times per week, performing the duties listed in Paragraphs 10 and 19. Plaintiff Harrison is not compensated for this additional overtime work beyond his scheduled shift. Thus, Plaintiff Harrison is not compensated for at least 2 hours per week and as much as , approximately, of additional overtime work beyond his scheduled shift per week.

24.  For example, Plaintiff Rivera routinely works over 40 hours in a workweek. When Plaintiff Rivera works over 40 hours, Defendant fails to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 10, 19 and 20 before the official start of his scheduled 8.5 hour shift, after the end of his 8.5 hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 7:30 am to 4:00 pm, Plaintiff Rivera arrives approximately 15-25 minutes

prior to the start of his scheduled shift and begins performing work tasks including, but not limited to, performing vehicle inspections, completing vehicle inspection forms, and preparing for roll call. Plaintiff Rivera also cannot always finish performing his duties during his regularly scheduled shift, and occasionally continues to perform work tasks for approximately 10-15 minutes beyond the end of the scheduled shift. In addition, Plaintiff Rivera has worked through his meal period approximately 2 times per week, performing the duties listed in Paragraphs 10 and 19. Plaintiff Rivera is not compensated for this additional overtime work beyond his scheduled shift. Thus, Plaintiff Rivera is not compensated for at least between 3 hours and 5 minutes and 4 hours and 20 minutes, approximately, of additional overtime work beyond his scheduled shift per week.

25. For example, Plaintiff Samuel routinely works over 40 hours in a workweek. When Plaintiff Samuel works over 40 hours, Defendant fails to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 11, 19 and 20 before the official start of his scheduled 8.5 hour shift, after the end of his 8.5 hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 7:00 am to 3:30 pm, Plaintiff Samuel arrives approximately 10-15 minutes prior to the start of his scheduled shift and begins performing work tasks including, but not limited to, picking up keys and vehicles, performing a pre-trip vehicle inspection, and checking in with his supervisor. Plaintiff Samuel also cannot always finish performing his duties during his regularly scheduled shift and continues to perform work tasks for approximately 10-15 minutes beyond the end of the scheduled shift. In addition, Plaintiff Samuel has worked through his meal period approximately 2-3 times per week, performing the duties listed in Paragraphs 11 and 19. Plaintiff Samuel is not compensated for this additional overtime work beyond his

scheduled shift. Thus, Plaintiff Samuel is not compensated for between 2 hours and 40 minutes and 4 hours, approximately, of additional overtime work beyond his scheduled shift per week.

26. All UPRs, AUPRs, and APSWs employed by Defendant are similarly situated and routinely work more than 40 hours in a workweek, but are denied proper compensation for hours worked in excess of 40 because Defendant fails to compensate UPRs, AUPRs, and APSWs for pre-shift, post-shift, and meal period work. The amount of pre-shift and post-shift overtime work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendant's timekeeping system and through other work and pay records.

### *The Rate at Which Overtime is Paid to Plaintiffs and All Others Similarly Situated*

27. While working as UPRs, AUPRs, and/or APSWs during the last three years, Plaintiffs and all others similarly situated have received certain payments for their work, including but not limited to night shift differentials, and/or vehicle differentials. These payments are made pursuant to Agency-wide policy, and/or collective bargaining agreements, and thus they are paid to Plaintiffs and all other similarly situated. However, Defendant fails to include these payments in the regular rate of pay at which overtime is paid for purposes of calculating overtime payments owed to Plaintiffs. Defendant fails to include these payments in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, Agency-wide practice.

28. For example, Plaintiffs Casis and Samuel have earned night shift differentials while working as UPRs, AUPRs, and/or APSWs during weeks in which they earned overtime compensation and they also worked shifts which covered time between 6:00 pm and 6:00 am. However, on these occasions, Defendant did not include these payments in the calculation of their overtime rate during those workweeks.

29. While working as an APSW, Plaintiff Samuel was required to drive a DPR vehicle—namely, a garbage truck—in performing his job duties during his shifts and, as such, earned a vehicle differential. However, Defendant failed to include the vehicle differentials in Plaintiff Samuel's regular rate of pay upon which his overtime rate is based during weeks in which he also earned overtime compensation.

30. All UPRs, AUPRs, and APSWs employed by Defendant who receive these payments pursuant to Agency-wide policy and/or collective bargaining agreement are similarly situated and routinely work more than 40 hours in a workweek, but are denied proper compensation for hours worked in excess of 40 because Defendant continues to fail to include these payments in the regular rate of pay upon which the Plaintiffs' overtime rate is based. The precise amount of improperly paid overtime received by each UPR, AUPR and APSW Plaintiff can be identified through the Defendant's timekeeping system and through other work and pay records.

### *Late Payment of Overtime Worked*

31. In those instances in which Defendant has compensated Plaintiffs and those similarly situated for working hours in excess of 40 hours a week, Defendant is required to "approve" requests for overtime compensation prior to paying Plaintiffs for that time. Due to delays in "approval" of overtime compensation by Defendant and its managers, or for other reasons that are unrelated to Defendant's ability to determine the amount of overtime compensation that is owed to the Plaintiffs, Defendant routinely pays Plaintiffs for their overtime work more than one pay period after the date that Plaintiffs have been paid for their non-overtime work hours for that week (i.e., more than two pay periods after the overtime was worked).

32. For example, while working as UPRs, AUPRs, and/or APSWs during the last three years, Plaintiffs Casis, Farrell, Harrison, Rivera and Samuel worked overtime hours for which they were not promptly compensated. Specifically, through no fault of the Plaintiffs, Defendant did not pay Plaintiffs for this overtime until at least 30 days after the overtime was worked.

33. All UPRs, AUPRs, and APSWs employed by Defendant are similarly situated and routinely work more than 40 hours in a workweek, but are routinely compensated for overtime work in an untimely manner (i.e., more than two pay periods after the overtime was worked). The precise amount of untimely paid overtime received by each UPR, AUPR, and APSW Plaintiff can be identified through the Defendant's timekeeping system and through other work and pay records.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

34. Plaintiffs hereby incorporate by reference paragraphs 1 through 33 in their entirety and restate them herein.

35. At all times material herein, during those workweeks in which Plaintiffs have worked hours in excess of 40 hours a week, they have performed work activities, including but not limited to when they are performing tasks enumerated in Paragraphs 10, 11, and 19, without compensation before the start of their shifts and after the end of their scheduled shifts, all of which is recorded on Defendant's timekeeping system CityTime. Plaintiffs also have performed work during their unpaid meal periods. This pre-shift, post-shift, and meal work has caused Plaintiffs to work in excess of 40 hours in a given week. Accordingly, as a result of these pay

practices, Defendant has failed to provide Plaintiffs with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

36. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their shifts, after the end of their scheduled shifts, and during their uncompensated meal periods.

37. As a result of Defendant's willful and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody and control of the Defendant and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

38. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay overtime compensation as alleged herein.

39.     Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

## FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY FOR PLAINTIFFS IN VIOLATION OF SECTION 7 OF THE FLSA

40.     Plaintiffs hereby incorporate by reference paragraphs 1 through 39 in their entirety and restate them herein.

41.     Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendant has failed to include certain premium payments such as night shift differential pay in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs and of all others similarly situated, resulting in Defendant paying Plaintiffs for overtime work at a rate that is below the rate mandated by the FLSA. Defendant's failure to include night shift differential pay and other forms of additional compensation in Plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

42.     As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendant and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory

provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

43. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay proper overtime compensation.

44. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT III

### FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR MONTHS AFTER THE OVERTIME WAS WORKED

45. Plaintiffs hereby incorporate by reference Paragraphs 1 through 44 in their entirety and restate them herein.

46. The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owned, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying Plaintiffs' overtime payments for working in excess of 40 hours a week by weeks and in some cases months, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments or due to management withholding such payments until the next budgetary quarter.

47. As this court recently recognized in *Accosta, et al. v. Lorelei Events Grp. Inc., et al.*, No. 7:17-cv-07804-NSR (S.D.N.Y. Jan. 21, 2022), "while 'the Second Circuit has no bright line rule for determining what qualifies as an 'unreasonable' amount of time for an employer to

delay paying its employees,' several courts have held that it is a violation of the FLSA to withhold employees overtime such that 'two weeks is an unreasonable amount of time for an employer to delay a paycheck.'" (quoting *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC), 2018 U.S. Dist. LEXIS 50787 (E.D.N.Y. Mar. 29, 2018)).  Here, Defendant's failure to pay Plaintiffs FLSA overtime pay in a timely manner and their withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

48. As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and payroll records for the Plaintiffs are in the exclusive possession, custody and control of Defendant and their public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amount of Defendant's liability can be ascertained.

49. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay overtime compensation as alleged herein.

50. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

(a)  Order a complete and accurate accounting of all the compensation to which the Plaintiffs are entitled;

(b)  Award Plaintiffs and those similarly situated monetary liquidated damages equal to their unpaid compensation;

(c)  Award Plaintiffs and those similarly situated interest on their unpaid compensation;

(d)  Award Plaintiffs and those similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e)  Grant such other relief as may be just and proper.

DATE: March 7, 2022                Respectfully submitted,

*/s/ Gregory K. McGillivary*
Gregory K. McGillivary
Diana J. Nobile
Sarah M. Block
John W. Stewart
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC  20005
Phone: (202) 833-8855
gkm@mselaborlaw.com
djn@mselaborlaw.com
smb@mselaborlaw.com
jws@mselaborlaw.com

*/s/ Hope Pordy*
Hope Pordy
Elizabeth Sprotzer
SPIVAK LIPTON, LLP
1700 Broadway
Suite 2100
New York, NY 10019
Phone: (212) 765-2100
hpordy@spivaklipton.com
esprotzer@spivaklipton.com

*Counsel for Plaintiffs*
